No. 13,061.

STATE OF LOUISIANA VS. HENRY FRIERSON.

SYLLABUS.

1. Evidence of threats made by the deceased though communicated to the accused, and evidence of the violent and dangerous character of the deceased are not admissible, unless foundation be laid by proof of an overt act or hostile demonstration by the deceased.
   HELD: The ruling of the District Judge, excluding evidence of threat was not erroneous.

2. Though the State has proven facts tending to show a previous difficulty between the deceased and the accused, that will not render admissible evidence of hostility and threats of deceased against the accused. HELD: The State having sought to prove a common design of the defendants charged as principals, it affords no ground to admit evidence of threats.

3. The court having properly excluded all evidence of threats, properly declined to instruct the jury on the assumption that evidence of threats had been admitted. HELD: The District Court could properly decline to take facts, urged by the defense, as basis for explaining to the jury what constituted an attack or hostile demonstration.

4. An instruction was given hypothetical as to the facts, and correct as relates to the law. HELD: The assailant in a difficulty is not injured by the instruction that the aggressor cannot interpose the plea of self-defense in his behalf.

ON APPEAL from the Sixteenth Judicial District Court for the Parish of St. Tammany. Reid, J.

M. J. Cunningham, Attorney General, and D. S. Kemp, District Attorney, for Plaintiff, Appellee.

Benj. M. Miller for Defendant, Appellant.

Argued and submitted February 11, 1899.
Opinion handed down March 20, 1899.

The opinion of the court was delivered by

Breaux, J.  The defendants, William, Henry and Joseph Frierson, were indicted for taking the life of John Peterson.

It appears that, on the day of the homicide, the accused and a few others met the deceased and his party on the railroad track near Pearl River, and immediately after meeting the deceased, the accused shot and killed him.

Five bills of exceptions set forth the points involved in this case.

The first bill was taken to the refusal of the district judge to admit testimony offered by defendant to prove threats made by the deceased against the defendant, a short time prior to the homicide, which had been communicated to accused.

The second and third bills were taken to the court's refusal to instruct the jury as requested by the accused.

The fourth bill was taken to the charge of the court, and the last, or fifth bill, was to the court's ruling, denying a new trial to the accused.

As relates to the first bill, witnesses for the defendant testified that just prior to the homicide, he, and those with him, met the deceased and the parties with him, and the deceased then said: "Is that Joe Frierson?" at the same time cursing him; that appellant threw his left hand up, and toward the breast of Peterson, the person killed, and said: "You stop;" but that deceased did not stop, and that, thereupon, the accused pulled his pistol and waved it, saying: "Look here, look here;" that the deceased then said, with an oath: "You; I know you too," stepped back, put his hand in his hip pocket, exclaiming several times, "look out, boys, I've got him, I've got him." The defendant swore that, believing from Peterson's actions, that he was about to pull a pistol and shoot him or his brother, he fired three shots at him, and Peterson fell.

The foregoing was principally the testimony of the defendant in his own behalf.  The other witnesses for the defendant gave substantially the same account of the shooting.

In behalf of the State, witnesses testified that the deceased left his pistol at home, and that he usually did not carry a pistol.  His body was searched one or two hours after the shooting, and no pistol was found.  These witnesses also testified that the deceased was carrying a side saddle at the moment he met the defendant.

Witnesses for the State, testifying as to the occurrence at the time

of the homicide, contradict the accused as a witness, and the other witnesses for the defense. They heard no conversation between the deceased and the accused before the shooting.

The first witness who testified, said: "That the two crowds met, and without anything being said, the deceased was shot;" and the other testimony of the State is corroborated in this respect.

The defense charge that the witnesses for the State had been drinking on the day of the shooting, and that they were under the influence of liquor, to a degree rendering them incapable of observing and stating correctly all that happened at the time of the killing.

The position of the defense, in argument, is that the district judge does not deny the truthfulness of the testimony of defendant's witnesses, but that, on the contrary, he, it may be well inferred, believed the account of the shooting given by defendant's witnesses.

The district judge made the following statement, which forms part of the bill of exceptions:

"The evidence, in the opinion of the court, entirely failed to show any overt act, or hostile demonstration, on the part of the deceased towards the accused, or any of his party, at the time of their meeting, which resulted in the homicide. The testimony of Henry Frierson, the only one of the accused convicted, distinctly showed him to be the aggressor at the time of the homicide."

In another bill, in which the facts are narrated, the trial judge states there was a severance of witnesses, but the three accused were necessarily present. Further: "The court gave very little weight to the testimony of John McQueen and Elijah Frierson, and none at all to Sol Bilbe. This witness was apparently strongly biased, and his willingness to testify to any circumstance favorable to the accused was apparent."

The defendants, William, Joseph and Henry Frierson, were put on their trial. William and Joseph were acquitted; Henry was found guilty of manslaughter, and sentenced to four years service in the penitentiary.

Henry appeals from the verdict and the sentence.

With reference to the first point in the case, we are not convinced that the trial judge erred in excluding the testimony offered to prove threats made by the deceased against the accused. It is well settled that circumstantial threats may be admissible in evidence, if the facts warrant their admission. In order that they may be admitted, it

must be shown that the person slain by some act evinced the intention of carrying out his threat; it must appear that there was an overt act, that the defendant was in imminent danger.

But, in this case, there was no proof of an overt act. The weight of the evidence negatives the asserted attack by deceased, and it proves that defendant, not the deceased, was the assailant. The accused made the only hostile demonstration.

The statement of the accused, and of his witnesses, regarding the words of the deceased, and the motion of his hand toward his pocket in which it appears there was no pistol, is not only not corroborated by the witnesses in behalf of the State, but is contradicted by their testimony.

But the defense urges that this evidence is weakened and discredited by proof of the fact that the witnesses had been drinking, and that it does not outweigh the evidence of the defendant regarding the occurrence just prior to and at the time of the shooting.

The testimony of record does not prove that all the witnesses were under the influence of liquor. One only was under its influence, it appears, and even as to this witness, it does not prove that his condition was such as to prevent him from correctly noticing all that transpired.

If the defense's view of this testimony should be taken as accurate, the evidence on the part of the accused does not prove, with any degree of certainty, that the defendant, on the day of the killing, was attacked by the deceased. This, manifestly, was the opinion of the trial judge in excluding the testimony, and we have not found that he erred.

Two men, each in company with a few others, coming from opposite directions, meet by chance on the highway; one is unarmed, and encumbered with a saddle he is carrying, while the other, brandishing his pistol, says to him "stop," and he does not stop. There is not, in this mere refusal to stop, any hostile demonstration such as to justify the taking of human life, or to warrant an accused in believing that his life is in danger, because some threats, he asserts, had been made by the deceased.

Appellant contends, upon another ground, that the evidence of threats, made by the deceased, should have been admitted.

Counsel's insistance is that the State attempted to prove a premeditated intent upon the part of the defendants to kill or make an

attack upon the deceased, and the State introduced evidence to the end of proving this intent.

That, in consequence, as we take it, the question before the jury was not alone whether the deceased committed an overt act towards the defendants, but that the State, by introducing the evidence of hostility towards the deceased, cast a presumption into the scale against the defendants, which entitled the defendants to prove that the deceased cherished hostility towards them.

In the absence of proof of an overt act, this evidence was not admissible. The testimony to show existing enmity was irrelevant.

"The rule is general threat, enmity, ill-will, are all inadmissible, unless proof be first given that there was an overt act of attack, and that defendant was in imminent danger." Wharton's Criminal Evidence, p. 757.

The second bill of exceptions taken to the refusal of the district judge to give the charge requested by the defendants, is not insisted on, as the instructions requested had been sufficiently given in the general charge. The bill being abandoned by the defense, we take up the next bill of exceptions.

The defendants requested the court to instruct the jury that "a threatening act or hostile demonstration is such an act or demonstration as is calculated to induce in the mind of the person to whom the same is directed, the belief that an assault is about to be made on him, or a weapon drawn for the purpose of assaulting him. The motion of the hand towards the hip pocket in a manner calculated to induce the belief that the person making the motion is about to draw a weapon, may be considered a threatening act or hostile demonstration, when considered in connection with proof of the dangerous and violent character of the person making such motion, or in connection with threats, or prior assault made by him against the person towards whom the motion is directed."

This instruction the court refused to give to the jury; and the court included in the bill the statement that it had excluded all testimony of threats or dangerous character of the deceased, and that, in the general charge, the court instructed the jury as to what constituted a hostile demonstration.

The defense concedes that the evidence of threats by the deceased, and of the violent character of the deceased, which they insist was

admitted by the court, was not admitted, however, by the court to prove his threats and dangerous character.

The court states that no such evidence was admitted for any purpose. If the court erred in making this statement, it remains as a fact that the accused has had the benefit of the evidence, although it was inadmissible, a fact of which he can scarcely be heard to complain.

If the judge is in error in his statement made part of the bill, we have not found that he, the accused, has any cause to complain, as his cause has not been prejudiced by testimony heard, though it appears at one time to have been excluded by the court, and subsequently admitted for another purpose. Under the circumstances, it affords no ground for a reversal of the verdict.

If evidence be admitted in error or for another purpose than proof of threat, it will not supply the absence of violent assault, and give to the accused the right to have the jury instructed as if a violent assault had been made.

This brings us to the fourth bill of exceptions to the court's charge, as follows: "If the jury believe, from the evidence, that at the time of the killing, the defendants, or any one of them, were the aggressors in the difficulty, the plea of self-defence can not be interposed in his or their behalf."

In our judgment the charge was not erroneous. The defendants were prosecuted as principals and, as having "acted together, aided and assisted each other" in carrying out a common design.

The charge must be taken in connection with the case, and, in that view, the words of the charge are to be taken *secundum subjectam materiam;* that is, with reference to the nature of the action.

The evidence shows if any one had cause to complain when the charge was delivered, it was not the appellant. As to him, the court, we think, stated the law correctly. He did the shooting, and the affair was between him and the deceased, and if he was the aggressor, the plea of self-defence could not, in law, be of any avail to him.

The fifth bill of exceptions was taken to the ruling of the district judge overruling the motion for a new trial.

The grounds were all contained in the bills of exceptions upon which we have already passed, save the ground that the court erred in admitting evidence that the defendants had fled from arrest. This ground was abandoned on appeal.

We reiterate, in answer to the recapitulation in the brief of the able and energetic counsel, upon which he asks the reversal of the judgment, as follows: That, urged counsel for accused, *evidence of threats made by deceased against the life of the defendants, and communicated to defendants before the homicide, and the violent and dangerous character of the deceased, should have been admitted.*

A. *Because* (said counsel for the accused) *the evidence produced on trial proved the commission of an overt act and hostile demonstration of the deceased—that which we have in substance before stated; the evidence did not show the necessity of the extreme action* taken by the defendant, or cause for apprehending great danger to his person.

B. *Because,* counsel said further, *the State had laid the foundation for the introduction of such evidence by defendants, by attempting to prove a conspiracy on the part of the defendants against deceased in a previous difficulty with two of the defendants."*

In our judgment, the attempt of the prosecution to prove that defendants had confederated to carry out a common design, and evidence of a previous difficulty connected with the design, as we understand, did not have the effect of laying a foundation to admit evidence of threat in the absence of proof of the "apparency" of the danger.

II. *"Because the District Court erred in refusing to give the charge requested by defendants, defining a threatening act or hostile demonstration."*

There was no exception taken to the general charge; in the absence of such exception, under repeated decisions, we must take it that the charge, as stated by the trial judge, was sufficient, and covered this objection, as relates to the attack.

III. *"Because the district judge erred in charging the jury as requested by the State and excepted to."*

After a careful review of this ground, we conclude: The evidence revealed that appellant alone of the three indicted acted; as to him it follows that the charge was not erroneous.

We have, as carefully as we could, reviewed the proceedings of this case, and have not found ground to conclude that the accused can be relieved.

Therefore the judgment appealed from is affirmed.